*POSTED ON WEBSITE*
*NOT FOR PUBLICATION*

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

In re                                       )     Case No.  24-20265-E-12
                                            )     Docket Control No.  RCW-12
HARDAVE SINGH DULAI and                     )
SUKHBINDER KAUR DULAI,                       )
                                            )
                    Debtors.                )
_____        )

**This Memorandum Decision is not appropriate for publication.**
**It may be cited for persuasive value on the matters addressed.**

### MEMORANDUM OPINION AND DECISION

Debtors in Possession Hardave and Sukhbinder Dulai (collectively "Debtor in Possession") filed a Motion to Value the Secured Claim of HD Owner, LLC ("Creditor").  Dckt. 193.  With this Motion, the Debtor in Possession seeks to value the secured claim of Creditor (the "Secured Claim") at ($2,477,000), the asserted value of the Real Properties (defined term *infra*) securing Creditor's Claim, leaving a general unsecured claim of ($1,453,000) for Creditor.  In the Opposition, Creditor counters asserting that the value of the Real Properties securing its claim is $3,930,000, which results in Creditor having a secured claim of ($3,930,000) and general unsecured claim for ($5,598.74).

After reviewing the pleadings and evidence presented to the court, the law, and arguments of counsel, the court now determines the value of the real property securing Creditor's Secured Claim 16-2.

As addressed in detail below, both the Debtor in Possession and the Creditor have provided expert witnesses to assist the court, as the finder of fact, in determining the value of the Real Properties securing Creditor's Claim. The two Appraisers prepared their respective Appraisal Reports slightly differently. Douglas Kurz, the Appraiser presented by the Debtor in Possession, has provided a separate Appraisal Report for all five Real Properties, and Benjamin Holt, the Appraiser presented by Creditor, has provided three Appraisal Reports, one of which was for three properties combined. The Real Properties that are the subject of the two Appraisal Reports and the defined terms used to identify them in this Ruling are:

| Properties as Identified by Creditor's Appraiser Benjamin Holt | Properties as Identified by Debtor in Possession's Appraiser Douglas Kurz |
|---|---|
| Court Defined Term For the Following Property in Ruling **Live Oak/Pcl 37 & 38 Property** | |
| Live Oak Property 38 .84 Acres, APN 010-180-037, Sutter County | Pcl 37 & 38, 40 Acres Live Oak, CA APN 010-180-038 |
| Court Defined Term For the Following Property in Ruling **Dulai/1076 Cox Lane Property** | |
| Dulai Property 64.22 Acres APN 027-220-072 Butte County | 1076 Cox Lane 64.22 Acres APN 027-220-072 Butte County |
| Court Defined Term For Following Properties in Ruling **Gridley Property** | |
| Gridley Property (3 Properties in one valuation) 27.77 Acres APN 024-130-019 APN 024-130-020 APN 024-130-021 Butte County | 943 Center Ave, Gridley, CA Primary Residence and Shop Butte County

Pcl 21 Center Ave 9.78 Acres APN 024-021 Butte County

Pcl 19 Center Street 8.94 Acres APN 024-130-019 Butte County |

///

1         After consideration of the pleadings, evidence, applicable law, and the legal arguments

2  presented, the court determines that the Real Properties (identified by address and parcel numbers

3  in the Ruling below) securing Creditor's Claim have the following values:

4        A.     Gridley Property ................................$1,326,000,

5        B.     Live Oak/Pcl 37 & 38 Property ..........$  625,000, and

6        C.     Dulai/1076 Cox Lane Property.............$1,130,000

7  (collectively the "Real Properties"). The aggregate value of these Real Properties that secure

8  Creditor's Claim is $3,081,000.

9         Pursuant to 11 U.S.C. § 506(a) the court computes the secured and unsecured claims of

10  Creditor HD Owner, LLC as stated in Amended Proof of Claim 16-2 as follows:

11        A.     Total Secured Claim Asserted,
                 Amended Proof of Claim 16-2...................................................($3,935,598.74)

12

13        B.     Value of Real Property Securing Amended Claim 16-2............$3,081,000

14        C.     Determination of Secured and Unsecured Claim:

15             1.     Amount of Secured Claim (value of collateral)............($3,081,000)

16             2.     Amount of General Unsecured Claim...........................($  854,598.74)

17         The court shall enter an order granting the Motion to Value which determines that Amended

18  Proof of Claim 16-2 is determined pursuant to 11 U.S.C. § 506(a) to be a secured claim in the

19  amount of ($3,081,000) and a general unsecured claim in the amount of ($854,598.74).

20                     **REVIEW OF MOTION AND SUPPORTING PLEADINGS**

21         The Motion filed by Debtor in Possession to value Creditor's Secured Claim is supported

22  by the Declaration of Douglas C. Kurz, a licensed agricultural real estate appraiser. Kurz Dec.,

23  Docket 195. Mr. Kurz provides his valuations of the Real Properties that is subject to the Creditor's

24  liens as:

25        A.     Live Oak/Pcl 37 & 38 Property

26             1.     "Subject property Pcl 37 & 38 Broadway APNs 010-180-038 and 010-180-
                 038, 40 acres; See the Pcl 37 & 38 Broadway appraisal ("37 & 38 Broadway

27                 Appraisal") is attached as Exhibit '5' to the Exhibits Pleading filed
                 concurrently hereto and incorporated herein by reference."

28

         a.     Mr. Kurz states that the value of the Live Oak Property is $477,00

B.    Dulai/1076 Cox Lane Property

    1.    "Subject Property 1076 Cox Lane APN 027-220-072-000, Lot Sq. Ft. 2,797,423 or 64.22 Acres; Pasture."

        a.     Mr. Kurz states that the value of the Dulai/1076 Cox Lane Property is $674,000.

C.    Gridley Property

    1.    "Subject Property 943 Center Avenue, Gridley, CA 95948 – Primary Residence/Shop/Land: 3 Parcels; Primary Residence, Shop, Thresher Planted: Walnuts, Peaches and Kiwis APN 024-130-019, 024-130-020."

        (1)     Mr. Kurz states that the value of the 943 Center Avenue Property is $907,000.

    2.    "Subject Property Pcl 21 Center Avenue APN 024-130-021-000 9.78 Acres; Pasture;. . . ."

        (1)     Mr. Kurz states that the value of this Property is $219,000.

    3.    "Subject Property Pcl 19 Center Street APN 024-130-019-00 8.94 acres; . . . ."

        (1)     Mr. Kurz states that the value of this Property is $200,000.

*See* Motion, p. 2; Exhibits 1-5; and Kurz Declaration; Dckts. 193, 195, and 196-200.

The aggregate value for the above Real Properties securing Creditor's Claim is stated by Debtor in Possession's Appraiser to be $2,477,000.

The evidence in support of the Motion to Value filed includes the Declaration of Douglas C. Kurz, a licensed agricultural real estate appraiser. Kurz Declaration; Docket 195. Mr. Kurz testifies he has 35 years' experience appraising agriculture land and has provided detailed appraisals for each of the parcels of property. *See* Kurz Appraisal Reports, Filed as Exhibits 1-5; Dockets 196-200.

**Opposition by Creditor**

On December 5, 2024, and December 9, 2024, Creditor filed its Opposition and supporting pleadings with the court. Dckts. 250-267. Creditor states:

1.    Creditor submits the appraisal report of Benjamin E. Holt in support of a total valuation of $3,930,000 for all five properties. Opposition, p. 6:11-16, Docket 250.

2.    Mr. Holt appraised the properties and divided them as follows:

a.  "Live Oak Property;" APN: 010-180-037; 38.84 acres located in unincorporated Sutter County (Ex. 5 of Mr. Kurz's appraisal), with a value of $1,030,000;

b.  "Gridley Property;" APN: 024-130-019; 024-130-020; 024-130-021; Total of 27.77 acres located in unincorporated Butte County (Ex. 1, 3, and 4 of Mr. Kurz's appraisal), with a value of $1,300,000; and

c.  "Dulai Property;" APN: 027-220-072; 64.22 acres located in Butte County (Ex. 2 of Mr. Kurz's appraisal), with a value of $1,600,000.

These values stated by Mr. Holt total $1,453,000 higher than the valuation by Debtor in Possession's expert, Mr. Kurz.

3.  In Mr. Holt's opinion, Mr. Kurz's selection of comparable sales disregards the actual comparability of the properties in favor of an emphasis on current sales, which is the primary reason for the significant differences in their valuations of the Live Oak Property and the Dulai Property. *Id.* at 7:6-9.

4.  Mr. Kurz's valuation of the Live Oak Property does not take into consideration the building site potential. This property is in close proximity to Yuba City, with large estate homes in the immediate area and recent sales of open land at $25,000 per acre. *Id.* at 7:10-12.

5.  Mr. Kurz categories of comparable sales do not take into account the agricultural components of the properties:

a.  Mr. Kurz's valuation of the Dulai Property does not incorporate any analysis of the effect of pistachio sales on value and utilized sales of inferior orchard types to value a young pistachio orchard.

b.  Mr. Kurz's valuation of the Gridley Property did not incorporate sales of kiwi vineyards, which command value well above land value, even if the kiwi vineyards are older or are in poor condition.

c.  Mr. Kurz's valuation of the Live Oak Property does not take into consideration localized sales in the immediate market area which does not capture the site value, and does not take into account the demand for peach orchard acreage which is evident by the recent development of peach orchards on the property.

*Id.* at 7:13-24.

**Debtor in Possession Reply**

Debtor in Possession filed a Reply on December 13, 2024. Docket 271. Debtor in Possession states:

1.  Creditor fails to address that farmland property prices have decreased significantly in the last twelve-months. HD Owner has not provided any evidence or explanation of how the collateral increased in value $1.65

million dollars since the filing of this case and HD Owner's first filed claim, Claim No. 16, filed on April 1, 2024. *Id.* at ¶ 1.

2.  Mr. Holt is not a local appraiser and does not know the region in which the Debtors' real property collateral is located. Mr. Kurz provides a detailed explanation as to how he arrived at his values for the real property collateral based upon precise and regional market dynamics and local comparable sales. *Id.* at ¶ 5.

3.  The Declaration of Douglas C. Kurz in Support of Reply provides more detail as to how HD Owner arrives at a value that is far higher than their first filed Claim No. 16. HD Owner's appraiser, Mr. Holt, did not use regional comparable sales and bracketing to reach the value of HD Owner's real property collateral. Instead, not comparable sales were used from properties hundreds of miles away from the Debtors real property collateral at issue in this case. *Id.* at ¶ 6.

4.  Declaration of Hardave Dulai in Support of this Reply provides a sampling of recent articles that area public record regarding the status of values of farmland in California and why these land values have and are decreasing. *Id.* at ¶ 8.

5.  On January 23, 2024, HD Owner foreclosed on part of Debtors' farmland with a per acre value of $13,571.43. It is disingenuous and a fraud on this Court and to argue Debtors' similar farmland is somehow worth $1.6 million or more than HD Owner bid and believed themselves comparable farmland is worth when they themselves had to value Debtors' foreclosed comparable farmland. *Id.* at ¶ 9.

## APPLICABLE LAW

While the Motion is phrased as one to Value the Collateral of Creditor, such valuation is the first step, not the end result of this Motion brought pursuant to 11 U.S.C. § 506(a). The ultimate relief is the valuation of a specific creditor's secured claim.

11 U.S.C. § 506(a) instructs the court and parties in the methodology for determining the value of a secured claim.

(a)(1)  An **allowed claim of a creditor** secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, **is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property**, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to set off is less than the amount of such allowed claim. Such **value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property**, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. § 506(a) (emphasis added). For the court to determine that creditor's secured claim (rights and interest in collateral), that creditor must be a party who has been served and is before the

court. U.S. Constitution Article III, Sec. 2 (case or controversy requirement for the parties seeking relief from a federal court).

The court determines the fair market value of the property securing the claim, and not a liquidation or distress sale value.  As discussed in Collier on Bankruptcy:

> In addition to determining the extent of the secured creditor's interest in the estate's interest in the collateral, **the court must determine the relevant fair market valuation** standard for the creditor's interest, such as whether to use foreclosure value or replacement value. Although section 506(a) directs that the valuation is to be conducted in light of (i) the purpose of the valuation and (ii) the proposed disposition or use of the collateral, further analysis is necessary to make this selection. For example, in the context of a chapter 13 plan in which the debtor proposed to keep the collateral for purposes of earning an income, the Supreme Court has directed that the proper general standard is replacement value.[83] In addition, if the relevant property securing a claim is personal property in an individual case under chapter 13, section 506(a)(2), added in 2005,[84] also requires that the relevant valuation standard is replacement value. Moreover, the Court has directed the use of consistent valuation standards among classes of cases arising within similar contexts, specifically rejecting "a ruleless approach allowing use of different valuation standards based on the facts and circumstances of individual cases."[85]
>
> It may be that, even if the debtor does not intend to retain the collateral, a proposed disposition of collateral does not necessarily require the use of a forced liquidation method to value the collateral. The Sears Holdings Corp. court determined that an orderly liquidation value approach was appropriate, because it was unclear in the case whether the collateral would be sold in a going-concern sale or in a forced liquidation sale. The court's determination was upheld by the Second Circuit on appeal.[85a]
>
> Third, the bankruptcy court must consider adjustments to market values to account for certain expenses and other factors to conform the valuation to the bankruptcy context. On this point, the Supreme Court has instructed that, in determining the replacement value of collateral that a debtor proposes to retain and use under a chapter 13 plan, the bankruptcy court, in applying the replacement value standard, may have to make certain adjustments to reflect "the value of items the debtor does not receive when he retains his vehicle, items such as warranties, inventory storage, and reconditioning."[86] If the relevant property securing a claim is personal property in an individual case under chapter 7 or 13, section 506(a)(2), added in 2005, directs that the value of the property shall be determined without deduction for costs of sale or marketing.

4 Collier on Bankruptcy P 506.03.

The court also finds it of value to address the Federal Rules of Evidence relating to the presentation of expert testimony and how that testimony is used by the finder of fact.  Federal Rule of Evidence 702 provides for expert testimony and the purpose of such testimony (**emphasis** added):

Rule 702. Testimony by Expert Witnesses

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

(a) the expert's scientific, technical, or other specialized knowledge **will help the trier of fact** to **understand the evidence** or **to determine a fact in issue**;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

The trier of fact does not merely adopt what an expert says, but uses the expert's specialized knowledge for the finding the necessary facts for there to be a decision in the matter.

## REVIEW OF APPRAISAL REPORTS
## AND EXPERT TESTIMONY

At the hearing on this Motion, both counsel stated that they did not request an evidentiary hearing on this matter and were submitting it on the written pleadings, including the detailed appraisal reports.

The court has reviewed the Declarations and the Appraisal Reports of the two Appraisers, Douglas C. Kurz for the Debtor in Possession and Benjamin Holt for Creditor.[1] The Declarations, critically and constructively address points relating to the Appraisals made by the other Appraiser, thus effectively providing rebuttal testimony. The court has read, reviewed, and considered the Declarations' evidence and the Appraisals submitted therewith. The court will reference specific portions of the Appraisals and Declarations, but will not attempt to present a detailed, page by page, review of the hundreds of pages of the Declarations and Appraisals.

The court begins with the basics: What each appraiser has stated, in their respective professional opinions, are the values for the Properties at issue in this Contested Matter. The chart below identifies the values stated by each Appraiser.

---

[1]  Kurz Declarations and Appraisal Reports; Dckts. 195, 272, 196-200; and Holt Declaration and Appraisal Report; Dckts. 251, 252-267.

| Properties As Identified by Creditor's Appraiser Benjamin Holt | Benjamin Holt, Creditor's Appraiser | Percentage Creditor's Valuation higher/(lower) than Debtor in Possession's Valuation | Douglas Kurz, Debtor in Possession's Appraiser | Properties As Identified by Debtor in Possession's Appraiser Douglas Kurz |
|---|---|---|---|---|
| Live Oak Property 38 .84 Acres, APN 010-180-037, Sutter County | $1,030,000 | 130.4% | $447,000 | Pcl 37 & 38, 40 Acres Live Oak, CA APN 010-180-038 |
| Dulai Property 64.22 Acres APN 027-220-072 Butte County | $1,600,000 | 137.4% | $674,000 | 1076 Cox Lane 64.22 Acres APN 027-220-072 Butte County |
| Gridley Property (3 Properties in one valuation) 27.77 Acres APN 024-130-019 APN 024-130-020 APN 024-130-021 Butte County | $1,300,000 | -2.0%[2] | $907,000 | 943 Center Ave, Gridley, CA Primary Residence and Shop Butte County |
| | | | $219,000 | Pcl 21 Center Ave 9.78 Acres APN 024-021 Butte County |
| | | | $200,000 | Pcl 19 Center Street 8.94 Acres APN 024-130-019 Butte County |
| | | | ======= | |
| | | | $1,326,000 | |

---

[2]  The court has attempted to use the following simple formula to compute the percentage differences between the Debtor in Possession's Appraiser's value and those of the Creditor's Appraiser:

Debtor Appraiser Value  + x% times Debtor's Appraiser Value
= Creditor Appraiser's Value.

The x% amount is the greater/(lesser) percentage dollar amount of Debtor's Appraiser's valuation necessary to have it equal Creditor's Appraiser's valuations.

As shown in the above chart, the Appraisers are in agreement as to the values for the Gridley Property, leaving "only" the Live Oak and the Dulai Properties for the court to address. However, those differences are great, with Creditor's Appraiser coming in with an opinion of value that is more than double that of the Debtor in Possession's Appraiser.

## GRIDLEY PROPERTY VALUATION

Based on the evidence presented the court concludes that the Gridley Property has a value of $1,326,000. There is no significant dispute between the two Appraisers and no further detailed analysis by the court is necessary.

## LIVE OAK/PCL 37 & 38 PROPERTY VALUATION
### APN 010-180-038 and 010-180-037

While the two Appraisers are in accord with respect to the Gridley Property, they come to grossly different valuations for the Live Oak/Pcl 37 & 38 Property and the Dulai Property. In considering these differences, the court first looks at how the two appraisers describe these properties and their condition.

**Debtor in Possession's Appraiser Douglas Kurz**
**Description of the Live Oak/Pcl 37 & 38 Property**

Mr. Kurz describes the Property as a:

[40 acre] Rural Lot With Individual Ag Well, Permanent Planted Peach, Prune & Walnut Orchards. No Public Water Or Sewer Hookup Available.

The Subject Property Consists Of Two Parcels, (Apn's 010-180-038 & 37), 1.16 acres and 38.84 acres. Per The Sutter County Building/Planning Dept, Apn 010-180-038 Is Not A Buildable Home Site. However, A Shop Or Ag Related Building Is Allowed By Code.

Exhibit 5, Land Appraisal Report Site Section; Dckt. 200, p. 2.

**Creditor's Appraiser Benjamin Holt**
**Description of the Live Oak/Pcl 37 & 38 Property**

Mr. Holt describes the Live Oak/Pcl 37 & 38 Property in his Appraisal as follows:

Live Oak Property: The property is generally rectangular in shape, with level to grade terrain that generally rests at an elevation of around 65± feet above sea level. The property is a multi-use farm property that is developed to a walnut orchard, peach orchards and prune orchard. The property does not have any structural improvements. Surrounding land uses are generally devoted to similar land

1      uses, with a variety of different permanent plantings. The area is also developed to
       rural residential and estate homesite uses, with good homesite demand due to the
2      rural setting and being in close proximity to Yuba City.

3      Holt Appraisal Report, p. 43 of 130; Exhibit 1, Dckt. 256.

4
       **Comments and Conclusions**
5      **Relating to the Descriptions**

6          In comparing the two descriptions, Mr. Holt includes the reference to possible homesite uses,

7      but does not provide any reasonably identifiable information as to how the Live Oak/Pcl 37 & 38

8      Property value itself would be enhanced by such possibility.

9          Mr. Holt then identifies the trees on the Live Oak/Pcl 37 & 38 Property and the condition

10     of such, including:

11     1.      Walnuts, Tulare Varietal, on 6.8 acres.

12         Mr. Holt describes the condition of the walnut orchard as follows:

13             The **walnut orchard** is in fair to average overall condition. It has had
               minimal farming inputs put in place over the last two years due to low walnut
14             prices, which make farming and harvesting the walnuts on the subject not
               financially feasible. The orchard exhibits generally inconsistent growth, with
15             several smaller trees observed and a few missing trees. The demand for
               developed walnut orchards throughout the state has been non-existent over
16             the last year due to the significant decline in walnut prices, with many similar
               walnut orchards being removed. Prices are expected to remain low for the
17             2024 crop. ***As such, the subject's walnut orchards are not considered to be
               financially feasible as of the date of value and will be valued as open land***.
18             Production from the subject walnut orchard was requested, but not provided
               to the appraiser.
19
20     *Id.* (**Bold** emphasis in original.)

21     2.      Peaches, Cling (Various, Varietal), on 22.15 acres, Planted in 2004 (10.95 acres),
       2020 (2.2 acres), and 2023 (9 acres). Mr. Holt describes the condition of the peach orchards
22     as follows:

23             <u>The peach orchards on the property are average overall condition and
               are being farmed and harvested</u>. Peach prices and demand for developed
24             peach orchards is perceived as being stable, however, there have been very
               few sales of peach orchards in the subject market discovered in recent years.
25             <u>The younger 2020 and 2023 planted orchards appear to have taken well and
               are moving along in development</u>.

26     *Id.* (<u>Underlined</u> emphasis added by the court.)

27     3.      Prunes, French Varietal, on 7.75 acres, Planted in 2001.

28         The prune orchard is considered to be at the end of its economically viable

                                         11

lifespan as it was planted over 20± years ago. The orchard is in poor overall condition with over 50% of the trees missing or dead. There is a crop hanging on living trees, but due to its advanced age and a typical economic lifespan of 20± years for commercial prune orchards, the development is no longer considered to be physically viable. ***As such, the prune orchard will be valued as open land***.

*Id.* (**Bold** emphasis in original.)

Reviewing the two descriptions of the Live Oak/Pcl 37 & 38 Property (summarized above), the two Appraisers do not appear to provide any significant differences with respect to the property and its current condition that they were valuing.

While Mr. Holt states that the Live Oak/Pcl 37 & 38 Property is being valued as "open land," and the trees on the Property provide no enhancement to the value of the "open land," in reaching his valuation of $1,030,000, he has made an enhancement of $130,000 for "Growing Imp. Value." Holt Appraisal Report, Final Conclusions, p. 129 of 130; Dckt. 262 at 18. The court conducted a word search for "growing" to see if the term "growing imp. value" or "growing improvement value" was linked to and discussed for the Live Oak/Pcl 37 & 38 Property. No such analysis, discussion, or reference was found with respect to this Property when it was left for the court itself to search for it.

In Mr. Holt's Final Conclusions, he addresses the "Physical Depreciation" for the orchards, stating that:

Permanent plantings can have a wide range of economic life spans, depending on cultural practices utilized over the lifespan of the development. Peach orchards have an expected lifespan of 23 years, while pistachio orchards have an expected lifespan of 50 years. Immature permanent plantings generally do not suffer from any physical depreciation while they are in their establishment stage; thus, the physical depreciation rate is not applied until the permanent planting is fully developed and all the funds to develop the permanent planting have been expended and the development is at or near a break-even operational point.

| Type | Economic Life | Immature Years | Depreciable Life | Annual Depreciation |
|------|---------------|----------------|------------------|---------------------|
| Pistachio Orchard | 50 | 6 | 44 | 2.25% |
| Peach Orchard | 23 | 3 | 20 | 5.00% |

*Id.*, p. 125 of 130; Dckt. 262 at 14.

In the Property Description for the Live Oak/Pcl 37 & 38 Property, Mr. Holt states that

12

10.95 acres of peaches were planted in 2004, 2.2 acres were planted in 2020, and 9 acres were planted in 2023. Appraisal, p. 43 of 130; Dckt. 256 at 12. This information from Mr. Holt discloses that 10.95 acres of the peaches are at the end of their economic life (23 years expiring in 2027).

It is not clear how the remaining 11.1 acres of peaches planted in 2020 and 2023 have a $130,000 increase in the value of the Live Oak/Pcl 37 & 38 Property Property.

**Review of Comparable Properties Used by the Appraisers**
**in Reaching Their Valuations for the**
**Live Oak/ Pcl 37 & 38 Property**

Both Appraisers provide the court with comparable properties they have used in coming up with the respective opinions as to the Value of the Live Oak/ Pcl 37 & 38 Property.

**Debtor in Possession Appraiser**
**Douglas Kurz Comparable Properties and Valuation**

The court begins with the comparable properties used by Douglas Kurz, the Appraiser for the Movant Debtor in Possession.

    A.    <u>Comparable Property No. 1, 50 District Center Drive, Oroville, California, 34.34 Acres</u>

        1.    Distance From Live Oak/Pcl 37 & 38 Property................15.47 Miles

        2.    Sales Price and Date

                a.    Sales Date.......................January 16, 2024

                b.    Sales Price.......................$310,000

                c.    Sales Price Per Acre........$   9,027

        3.    Adjustments

                a.    Comparable Property No. 1 being 34.34 Acres, is Smaller than the 40 Acre Live Oak/Pcl 37 & 38 Property

                        (1)    Increase for Additional Acres...................$71,305

                                (a)    For the additional 5.66 Acres of the Live Oak/Pcl 37 & 38 Property, that averages an additional $12,598 per acre.

                b.    Comparable Property No. 1 having an "Old Manf Hm-Poor Cond," Mr. Kurz makes a decrease in the sales price of Comparable Property No. 1 of ($5,000).

///

13

4.      Adjusted Value Based on Comparable Property No. 1 for the Live Oak/Pcl 37 & 38 Property is ...............................$376,305.

5.      For Comparable Property No. 1, Mr. Kurz states, "Comp 1 Was Selected To Bracket The Subjects Lot Size With An Inferior Property And Represents The Lower End Of The Value Range."

B.      <u>Comparable Property No. 2, Dayton West Rd Pcl 3, Dayton, California, 66.7 Acres</u>

1.      Distance From Live Oak/Pcl 37 & 38 Property................28.84 Miles

2.      Sales Price and Date

a.      Sales Date.......................August 2, 2024

b.      Sales Price.......................$850,000

c.      Sales Price Per Acre........$ 12,743

3.      Adjustments

a.      Comparable Property No. 2 being 66.7 Acres, is Larger than the 40 Acre Live Oak/Pcl 37 & 38 Property

(1)      Decrease for Less Acres..........................($336,340)

(a)      For the lesser 26.76 Acres of the Live Oak/Pcl 37 & 38 Property, that averages a reduction of ($12,568) per acre.

4.      Adjusted Value Based on Comparable Property No. 2 for the Live Oak/Pcl 37 & 38 Property is ........................$513,660.

5.      For Comparable Property No. 2, Mr. Kurz states:

Comp 2 Was A Pending Sale In The Original Report But Has Closed Escrow. It Was An All Cash Sale With No Concessions. Original List[ing] [pri]ce Was $1,340,000. List Price Reduced To $950,000 After 48 Days, Offer Received At 69 Days On The Market. Final Sales Price Was [$9]50,000. Comp 2 Has Fully-Grown Almond Trees. Spread Across Four Parcels, Almond Varieties Including Non Pareil, Butte, Carmel, [illegible]drich, Sonora, Peerless, And Mission.[3]

C.      <u>Comparable Property No. 3, Dayton West Rd Pcl 3, Dayton, California, 83.12 Acres</u>

1.      Distance From Live Oak/Pcl 37 & 38 Property...............20.76 Miles

2.      Sales Price and Date

---

[3]  It appears that when page 2 of 17 of the Appraisal Report was printed, the left and right edges were cut off, with two to three letters missing. The court has shown in [brackets] what the court concluded the word to be, or if not readily ascertainable, showed "[illegible]" for the missing letters.

14

1        a.     Sales Date........................July 9, 2024

2        b.     Sales Price........................$1,162,000

3        c.     Sales Price Per Acre........$    13,980

4      3.     Adjustments

5        a.     Comparable Property No. 3 being 83.12 Acres, is Larger than the 40 Acre Live Oak/Pcl 37 & 38 Property

6

7              (1)      Decrease for Less Acres....................($543,228)

8                      (a)     For the lesser 43.12 Acres of the Live Oak/Pcl 37 & 38 Property, that averages a reduction of $12,598 per acre.

9

10      4.     Adjusted Value Based on Comparable Property No. 3 for the Live Oak/Pcl 37 & 38 Property is ..................$681,772.

11      5.     For Comparable Property No. 3, Mr. Kurz states, "[Co]mp 3 Consists of Two Parcels Planted to A 11 Year Old Chandler Walnuts With 2 Sources of Irrigation Per the Agent."

12

13 *See*, Appraisal Report, pp. 1 and 2 of 17; Exhibit 5, Dckt. 200 at 2, 3.

14        After making the adjustments to each comparable property and generating his "Indicated

15 Value of Subject [the Bankruptcy Estate Property]," the values for the Live Oak/Pcl 37 & 38

16 Property based on the comparable properties are:

17        Based on Comparable 1............................$376,305;

18        Based on Comparable 2............................$513,660; and

19        Based on Comparable 3............................$681,772.

20        Mr. Kurz also makes the following statement concerning the comparable properties and the

21 downward trend in the market for these types of properties:

22        [T]hough Ag Values Are Estimated To Be On A Similar Downward Trend As Other

23        Segments Of The Market, Insufficient Sales Are Availab[le] [to] Measure The Decline. In Order To Account For The Decline, If Any, The Most Recent Sales

24        Found Were Used In The Analysis. This Is [Su]pported By The Pending Sale Which Has An Indicated Price Per Acre That Falls Within The Range Of Value Offered By

25        The Most Rece[nt] [cl]osed Sales.

26 *Id*.; p. 2 of 17.

27        In his Declaration, Mr. Kurz also provides the following testimony concerning the selection

28 of the comparable properties used in reaching his opinion of value:

f.      A search of Ag related sales in Live Oak was the first search parameter, none found. Most likely due to inflation and high interest rates, sales have been very limited. Parameters expanded to Meridian, Dayton, Durham, Honcut, Oroville & Yuba City until 3 suitable sales. Comps 2-3 are considered superior properties and represent the upper end of the value range. Sales 2-3 are considered recent and change in market condition adjustments do not appear necessary.

g.      The Market Approach is the only relevant approach to value that is meaningful. The indicated value range after adjustments for the price per acre is $9,000 to $14,000. All 3 sales were weighted equally, A mid value range value indicator was selected, $11,917 Per Acre is considered reasonable indicator of value. 40 Ac X $11,917 = $476,680. The Final Opinion of value was reconciled to $477,000 rounded.

Declaration, p. 9:22; Dckt. 195.

His Declaration also includes his discussion of Comparable Property No. 1 as an inferior property which was "bracket" for the low end of Mr. Kurz's value range. *Id*.; p. 9:23-24.

Comparable Property No. 2 was an all cash sale, with the listing price having been $1,340,000, then reduced to $950,000, and further reduced to $850,000 as the sales price. Comparable Property No. 2 has full-grown almond trees, with various varieties. *Id.*

Comparable Property No. 3 has 11 year old Chandler Walnuts. *Id*. Both Appraisers have concluded, the Walnuts on the Live Oak/Pcl 37 & 38 Property are beyond their productive lives and provide no value to the Live Oak/Pcl 37 & 38 Property.

Based on the comparable properties and his analysis, Mr. Kurz concludes that the value of the Live Oak/Pcl 37 & 38 Property is $477,000, which is an average of $11,925 per acre. This is ($2,055) per acre less, a (14.7% reduction), than the $13,980 per acre average for Comparable Property No. 3's sale price, the highest average per acre price of the comparable properties.

In looking at the comparable properties and adjustment, the court believes that Mr. Kurz has bracketed the values a little low, and for his comparable property calculation the court concludes that a per acre valuation of $12,915 is more accurate. Based on Mr. Kurz comparable properties and the higher per acre amount, this would increase his computation of the value of the Live Oak/Pcl 37 & 38 Property to $516,600.

///

///

///

**Creditor's Appraiser**
**Benjamin Holt Comparable Properties and Valuation**

The court reviews the comparable properties used by Benjamin Holt in coming to his $1,030,000 opinion of value for the Live Oak/Pcl 37 & 38 Property.[4]

On the Exhibit identified as Segment 002 of Segment 006; Dckt. 260; the court has identified some comparable properties information that would appear to be relevant to the Live Oak/Pcl 37 & 38 Property.

On pages 97 and 99 (summaries of adjustments) of 130 of the Appraisal Report (Dckt. 259 at pp. 6-9), and page 89 (the sales and adjustments) of 130 (Dckt. 258 at 18) are Charts identifying ten comparable properties used by Mr. Holt in preparing the Appraisal for Creditor. The sales information and adjustment information provided the court summarized as follows:

A.  Land 1 - No Address Provided (however, APNs have been provided for all the comparable properties).

    1.  Recorded Date..................May 2022.

    2.  Location.................Oroville, California, 24 Miles distant from the Live Oak/Pcl 37 & 38 Property (computed using Google Maps).

    3.  Acreage..............10.41 Acres, with 10.00 farmable acreage.

    4.  Sales Price (Open Land).......................................$185,000.

        a.  Gross Price Per Acre ................. $17,771.

    5.  No adjustments for any differences from the Live Oak/Pcl 37 & 38 Property.

B.  Land 2 - No Address Provided.

    1.  Recorded Date.................. July 2022.

    2.  Location.................Live Oak, California.

    3.  Acreage..............22.50 Acres, with 21.00 farmable acreage.

    4.  Sales Price (Open Land).......................................$368,000

---

[4] At this juncture, and possibly to explain the following information obtained from Mr. Holt's Appraisal Report, the court finds this 279 page Appraisal to be somewhat challenging to review. It is not broken up into the subject property, here the Live Oak/Pcl 37 & 38 Property, and the comparable properties for that one subject property. Rather, information about various parcels are spread over the many, many pages of the Appraisal Report. The court has canvassed the 279 pages to try and locate all of the relevant information that the expert witness is attempting to communicate.

a.      Gross Price Per Acre.................. $16,356

5.      No adjustments for any differences from the Live Oak/Pcl 37 & 38 Property.

C.      Land 3 - No Address Provided.

1.      Recorded Date..................November 2022.

2.      Location.................Sutter, California, 13.5 Miles distant from the Live Oak/Pcl 37 & 38 Property (computed using Google Maps).

3.      Acreage..............154.50 Acres, with 145.00 farmable acreage.

4.      Sales Price (Open Land)........................................$2,250,000

a.      Gross Price Per Acre ................. $14,563.

5.      No adjustments for any differences from the Live Oak/Pcl 37 & 38 Property.

D.      Land 4 - No Address Provided.

1.      Recorded Date..................January 2023.

2.      Location.................Gridley, California, 6.7 Miles distant from the Live Oak/Pcl 37 & 38 Property (computed using Google Maps).

3.      Acreage..............19.74 Acres, with 14.75 farmable acreage.

4.      Sales Price ...........................................................$625,000

a.      Price Per Acre.............................$31,662.

5.      Adjustments to Comparable 4 Sales Price:

a.      ($81,100) for buildings 4.

b.      ($219,620) for permanent plantings.

6.      Adjusted Price.......................................................$324,280.

a.      Adjusted Price Per Acre ............ $22,000.

E.      Land 5 - No Address Provided.

1.      Recorded Date..................February 2023.

2.      Location.................Yuba City, California, 9.8 Miles distant from the Live Oak/Pcl 37 & 38 Property (computed using Google Maps).

3.      Acreage..............15 Acres, with 14.00 farmable acreage.

4.      Sales Price.............................................................$815,000

a.      Price Per Acre............................$54,333.

5.      Adjustments to Comparable 5 Sales Price:

     a.     ($335,000) for buildings.

6.      Adjusted Price.......................................................$479,900.

     a.     Adjusted Price Per Acres............$31,993.

F.     Land 6 - No Address Provided.

    1.     Recorded Date..................May 2023.

    2.     Location.................Live Oak, California.

    3.     Acreage..............20 Acres, with 19 farmable acreage.

    4.     Sales Price..............................................................$765,000.

     a.     Price Per Acre ........................... $38,250

    5.     Adjustments

     a.     ($132,950) for Buildings.

    6.     Adjusted Price.......................................................$632,050.

     a.     Adjusted Price Per Acre..............$31,603.

G.     Land 7 - No Address Provided.

    1.     Recorded Date..................August 2023).

    2.     Location.................Oroville, California, 24 Miles distant from the Live Oak/Pcl 37 & 38 Property (computed using Google Maps).

    3.     Acreage..............32.00 Acres, with 30.00 farmable acreage.

    4.     Sales Price..............................................................$270,000

     a.     Gross Price Per Acre ................. $8,438.

     b.     No adjustments for any differences from the Live Oak/Pcl 37 & 38 Property.

H.     Land 8 - No Address Provided.

    1.     Recorded Date..................November 2023.

    2.     Location.................Oroville, California, 24 Miles distant from the Live Oak/Pcl 37 & 38 Property (computed using Google Maps).

    3.     Acreage..............15.00 Acres, with 14.00 farmable acreage.

    4.     Sales Price..............................................................$555,000.

a.        Price Per Acre..............................$37,000.

5.        Adjustments

    a.        ($187,500) for buildings.

6.        Adjusted Price.......................................................$367,500.

    a.        Adjusted Price Per Acre .............$24,500.

I.   Land 9 - No Address Provided.

1.        Recorded Date..................February 2024.

2.        Location.................SW Yuba City, California, Estimated 20 Miles distant from the Live Oak/Pcl 37 & 38 Property (computed using Google Maps).

3.        Acreage..............159.43 Acres, with 153.00 farmable acreage.

4.        Sales Price............................................................$3,507,460

    a.        Price Per Acre..............................$22,000.

5.        No adjustments for any differences from the Live Oak/Pcl 37 & 38 Property.

J.   Land 10 - No Address Provided.

1.        Recorded Date..................April 2024.

2.        Location.................Yuba City, California, 9.8 Miles distant from the Live Oak/Pcl 37 & 38 Property (computed using Google Maps).

3.        Acreage..............53.07 Acres, with 49.00 farmable acreage.

4.        Sales Price............................................................$1,150,000

    a.        Price Per Acre ............................ $21,669

5.        No adjustments for any differences from the Live Oak/Pcl 37 & 38 Property.

Appraisal Report, p. 89 of 130; Dckt. 258 at 18.

On page 98 of 130 of the Appraisal Report, there is a Chapter titled "Live Oak Property Land Sale Adjustments." *Id.* This chart lists the 10 factors listed when comparing the comparable properties to the Live Oak/Pcl 37 & 38 Property. These are:

1.        Real Property Rights.
2.        Financing.
3.        Sale Conditions.
4.        Immediate Expenses.
5.        Mkt Conditions (time).

| | 6. | Location. |
| | 7. | Physical Characteristics |
| | | Access |
| | | Size |
| | | Percentage Farmable |
| | | Topography |
| | | Soil Characteristics |
| | | Water Supply |
| | 8. | Economic Characteristics |
| | 9. | Use (Zoning) |
| | 10. | Non-Reality Components |

*Id*. On this Chart the information provided is whether Mr. Holt found the comparable properties to be similar (most), Inferior, or "Sl Superior." No information is provided, or readily identifiable by the court as to why or how Mr. Holt finds them to be superior or inferior and how he computes the adjustment. Rather, Mr. Holt merely states the price per acre as he has adjusted it.

On the prior chart listing the 10 sales for the comparable properties (Appraisal Report, p. 97-98; Dckt. 259 at pp. 6-9.), there is an adjustment made for structures on the property and an adjustment for permanent plantings, but nothing else for the items identified on the Live Oak Property Land Sale Adjustments chart (Appraisal Report, pp. 89, 98; Dckt. 259 at 9 and Dckt. 258 at 18).

Mr. Holt does state that with respect to the Live Oak/Pcl 37 & 38 Property, as compared to the comparable properties:

> The Live Oak Property has good fertile soils and is in an area with high estate homesite demand, however, it does not have surface water rights and is somewhat large than many of the sales. The adjusted data points the appraiser to a value above the inferior rated sales at above $22,000 per acre for the subject property and below $24,500 per acre as indicated by superior rated sales. Given this analysis, the subject's underlying land is valued at $23,000 per acre.

Appraisal Report, p. 98; Dckt. 259 at 9.

With the 40 acres that comprise the Live Oak/Pcl 37 & 38 Property, and value of $23,000 per acre, the value would be $920,000.

Mr. Holt provides his Sales Comparison Approach conclusions for the various Properties on page 123 of 130 of the Appraisal. Appraisal Report, p. 123; Dckt. 262 at 12. For the Live Oak/Pcl 37 & 38 Property, Mr. Holt comes to an "As Is" Indicated Value based on comparable sales of $1,019,270, computing his conclusions as follows:

21

| Value Component | | Extended Value |
|---|---|---|
| Walnut Orchard (Open Land) | 6.80 acres @ $23,000 | $156,400 |
| Peach Orchards | 22.15 acres @ $30,000 | $664,500 |
| Prune Orchards (Open Land) | 7.75 acres @ $23,000 | $178,250 |
| Ancillary Land | 2.14 acres @ $23,000 | $49,220 |
| Less Cost to Remove Orchards | 14.55 acres @ ($2,000) | ($29,100) |
| Indicated Value "As Is" | | $1,019,270 |

*Id*.

For Open Land, Mr. Holt concludes that the valuation is $23,000 per acre. He has listed there being 22.15 acres of peach orchards on the Live Oak Properties/Pcl 37 & 38 Property with a value of $30,000 an acre.

However, as discussed above, the property description for the Live Oak/Pcl 37 & 38 Property, Mr. Holt states that 10.95 acres of peaches were planted in 2004, 2.2 acres were planted in 2020, and 9 acres were planted in 2023. Appraisal, p. 43 of 130; Dckt. 256 at 12.

Mr. Holt then states in the Appraisal Report that a Peach Orchard has a 23-year economic life, with 3 immature years. Appraisal Report, Cost Approach Section, p. 125 of 130; Dckt. 262 at 14.

This information from Mr. Holt discloses that 10.95 acres of the peaches are at the end of their economic life (23 years expiring in 2027). From Mr. Holt's Appraisal Report 10.95 acres of the Peach Orchard should be open land valued by Mr. Holt at $23,000, and only the remaining 11.2 acres valued, by Mr. Holt's calculation at $30,000 an acre. This results in the court, as the finder of fact concluding that the following valuation adjustments to Mr. Holt's $664,500 for the Peach Orchard Above are appropriate:

| | | |
|---|---|---|
| Peach Orchards (Open Land) | 10.95 acres @ 23,000 | $251,850 |
| Peach Orchards | 11.20 acres @ 30,000 | $336,000 |
| Cost to Remove Peach Trees Past Economic Life | 10.95 acres @ ($2,000) | ($21,000) |

With these adjustments, using Mr. Holt's comparable properties and adjustments he has identified, the court computes the actual valuation by Mr. Holt to be as follows:

///

///

22

| Value Component | | Extended Value |
|---|---|---|
| Walnut Orchard (Open Land) | 6.80 acres @ $23,000 | $156,400 |
| Peach Orchards (Open Land) | 10.95 acres @ 23,000 | $251,850 |
| Peach Orchards | 11.20 acres @ 30,000 | $336,000 |
| Prune Orchards (Open Land) | 7.75 acres @ $23,000 | $178,250 |
| Ancillary Land | 2.14 acres @ $23,000 | $49,220 |
| Less Cost to Remove Orchards | 25.50 acres @ ($2,000) | ($51,000) |

-------------------------------------------------------------------------------

Indicated Value "As Is"                                                  $920,720

With these adjustments, Mr. Holt per acre value from the comparable properties is $23,018, which includes the viable peach trees (but not providing value for the trees that are at the end of their economic life).

**The Court's Factual Finding of Value
of the Live Oak/Pcl 37 & 38 Property**

The court has been presented with two very divergent Appraisals by these two experts, Benjamin Holt for the Creditor and Douglas Cruz for the Debtor in Possession, for the Live Oak/Pcl 37 & 38 Property. Mr. Holt's valuation is at $23,000 for the "open land," for which there is a ($2,000) an acre reduction for removing the past Economic Life Orchards (which is 25.5 acres of this 40-acre property).

Unfortunately, Mr. Holt's Appraisal does not clearly show how he made adjustments to value for the comparable properties. He states the net adjustment amount, but not the economic rationale behind it. While Mr. Holt may believe that the information is there in the 279 pages of his Appraisal and Exhibits, it has not been clearly or effectively communicated to the trier of fact.

As the court discusses above, the court computes the comparable value from Mr. Kurz Appraisal Report for Debtor in Possession for the Live Oak/Pcl 37 & 38 Property to be $516,600. This results in a $12,915 per acre value. For Creditor, Mr. Holt comes to a $23,018 (as the court has adjusted) average per acre from the comparable properties he has selected.

In Mr. Holt's Declaration (Dckt. 251) and in Mr. Kruz's Reply Declaration (Dckt. 272), each of the Appraisers have stated issues they take with the other Appraiser's Declaration. This effectively is in the nature of rebuttal testimony.

Mr. Kruz states that he believes that the use of older sales in Mr. Holt's Declaration provides data comparable, which have not been reduced for declining sales prices, and also overvalues the

crop value of the Properties.  The court has noted this discrepancy with respect to the value given for the land on which old, beyond their productive life Peach Trees on 10.95 acres.  Dec., ¶ 10; Dckt. 272.  With respect to value enhancements for potential residential development, Mr. Kurz states:

> 11.     The Live Oak property was appraised "as is", which is the current use.  I did not consider potential development value as 39 ac properties are not a typical home site in this area. Most high end rural home sites are 1-2 ac in size. depending on zoning and/or location in a flood zone. Also due to the high cost of custom housing, very few are being built at this time.

*Id.*; ¶ 11.  He also takes exception with Mr. Holt's Appraisal not adjusting for the decline in the market and increase in interest rates, stating:

> 14.     Page 96 of 130: The report states the market is soft for Ag properties in the region from low crop prices , high interest rates, significant increases in the cost to harvest which have impacted the profitability of the farming operation. Sales used are from 2017-2023 with no negative adjustments for changing market conditions. It appears, the most recent sales have the lowest price per acre, but none of 'the older sales were adjusted down to reflect current market conditions. Also noted, there are several charts in the report which show declining values. The report under review states, to account for the declining market, the lower end of the value indicators were given most weight. With out negative market condition adjustments, the indicated values reflect market values from 1-5 years ago, not current value, which may be misleading.

*Id.*; ¶ 14.

> 17.     Page 91 of 130 [of Mr. Holt's Appraisal Report]: States the prune orchard on the live oak property and the kiwi vineyards on the Gridley property are no longer physically viable and the walnut orchards are not financially feasible. Page 50 of 130 states the peach block is also not economically viable. Page 64 of 130 states the Pistachios have yet to produce a viable crop. However, the valuation assigned these properties appear to be based mainly on sales with viable orchards and crops. Almost all comparables used are superior, which typically indicates a higher value. Inferior comparables are critical for bracketing the low end of value range so everyone knows the subject value is above the inferior sales and the subject value is below the superior sales.

*Id.*; ¶ 17.

Mr. Holt's Declaration also provides constructive rebuttal testimony comments with respect to Mr. Kurz's Appraisal Report presented by the Debtor in Possession.  Mr. Holt's testimony includes (identified by paragraph number in the Declaration):

> 8.     As described on page 5 of the Appraisal, the valuation process involved utilizing all techniques and procedures considered appropriate to the assignment, including physical site inspections on August 6, 2024. However,

due to the lack of production and pricing data for the Property, the Income Approach was not implemented. **Additionally, the Cost Approach was only applied to the younger orchard development improvements for the pistachio orchard on the Dulai Property and for the peach orchard on the Live Oak Property**. The Cost Approach was not implemented for the older kiwi vineyards, or for the smaller interplanted peach orchard on the Gridley Property. **The walnuts on the Gridley Property and Live Oak Property were deemed to no longer be financially feasible** due to low walnut prices, elevated farming costs and declining market demand for walnut orchards. **The prunes orchard on the Live Oak Property were deemed to be no longer physically viable** due to the number of missing trees and due to the fact that the remaining trees have reached the end of their economic productive life. Appraisal, p. 5.

[emphasis added]
. . .

11. In my opinion, Mr. Kurz's selection of comparable sales disregards the actual comparability of the properties in favor of an emphasis on current sales, which is the primary reason for the significant differences in our valuations of the Live Oak Property and the Dulai Property.

12. Mr. Kurz's valuation of the Live Oak Property does not take into consideration the building site potential. This property is in close proximity to Yuba City, with large estate homes in the immediate area and recent sales of open land at $25,000 per acre.

13. Mr. Kurz categories of comparable sales do not take into account the agricultural components of the properties.

• Mr. Kurz's valuation of the Dulai Property (addressed below) does not incorporate any analysis of the effect of pistachio sales on value and utilized sales of inferior orchard types to value a young pistachio orchard.

• Mr. Kurz's valuation of the Gridley Property [not at issue in light of the two Appraisers' agreeing valuations] did not incorporate sales of kiwi vineyards, which command value well above land value, even if the kiwi vineyards are older or are in poor condition.

• Mr. Kurz's valuation of the Live Oak Property does not take into consideration localized sales in the immediate market area which does not capture the site value, and does not take into account the demand for peach orchard acreage which is evident by the recent development of peach orchards on the property.

Dec., ¶¶ 8, 11-13; Dckt. 251.

Here, the court has been presented with farmland which, but for 11 acres of peaches of younger trees, is land on which "worn out" walnut and peach orchards are located. The court finds that Mr. Holt has not sufficiently explained to the court how the higher end valuations he has presented have been adequately adjusted for these "dead orchards." Also, it is not clear to the court

1  from Mr. Holt's Appraisal Report why the Live Oak/Pcl 37 & 38 Property has enhanced value for

2  possible residential development.  Additionally, the cost and expense of converting the current Live

3  Oak/Pcl 37 & 38 Property to residence, rather than farm property has not been considered.  Mr. Kurz

4  did address that in his Reply Declaration.

5         The court, after reviewing the Appraisal Report presented by Mr. Holt for Creditor, the court

6  finds that his valuation to be for the  Live Oak/Pcl 37 & 38 Property to be $920,720.  This results

7  in a $23,018 per acre value.  These appear to be based on higher end "comparable" properties.

8         The finder of fact concludes that Mr. Kurz has proved the court with lower end comparable

9  properties and Mr. Holt has provided higher end comparable properties.  In reviewing the Appraisal

10  Reports, it does not appear that there are any of the comparable properties that both Appraisers used.

11         The orchard land on these properties, except for 11.20 acres of peaches, is "dirt value," on

12  which there are out of economic age walnut trees and peach trees that have to be removed,

13  preparation work done, new trees planted, and then any buyer, after making such substantial

14  investment, to wait three years (based on Mr. Holt's Appraisal Report, p. 125 of 130;  Dckt. 262

15  at 14) before production begins.  It was not clear how long the walnut tree land would be

16  "immature" and not producing if a new walnut orchard was planted.

17         Mr. Kurz in his Appraisal provides three adjusted values of $9,024, $12,743, and $13,980

18  per acre with his comparable properties.  Mr. Holt provides ten comparable properties with adjusted

19  per acre values of $8,438, $14,536, $16,356, $17,771, $21,669, $22,000, $22,000, $24,500, $31,603,

20  and $31,993.  The court finds that Mr. Holt has not sufficiently explained why the higher end

21  properties have the adjusted per acre prices of $31,993, $31,603, and $24,500. The court further

22  finds that adjustments for the $21,669 and $22,000 per acre values have not been sufficiently

23  explained.  For the Mr. Kurz valuation, the court does not find it to adequately address the dramatic

24  interest rate changes from 2020 through 2022, and then the increases in 2023 and 2024.

25         Debtor in Possession's Appraiser comes in at the low end with properties presenting an

26  adjusted  $12,915 per acre value.

27         Based on the Expert Testimony, the information provided in the two Appraisal Reports, the

28  Declarations, and the Rebuttal Testimony provided by both Appraisers, the court finds that the Live

26

Oak/ Pcl 37 & 38 Property has a value of $625,000, which averages $15,625 per acre.

**DULAI /1076 COX LANE PROPERTY VALUATION**
**APN 027-220-072; 64.22 ACRES**

As with the Live Oak/Pcl 37 & 38 Property Appraisal Reports, Mr. Kurz, the Debtor in Possession's Appraiser, and Mr. Holt, Creditor's Appraiser, have come to grossly different valuations for the Dulai/1076 Cox Lane Property. In considering these differences, the court first looks at how the two Appraisers describe these properties and their condition.

**Descriptions of the Dulai/1076 Cox Lane Property by**
**Debtor in Possession Appraiser Douglas Kurz**

Mr. Kurz describes the Dulai/1076 Cox Lane Property as 64 acres located near the southeast corner of Butte County, California. Kurz Appraisal Report (Subject and Site sections); Exhibit 2, Dckt. 197 at 2. In his Declaration, he states improvements on the Dulai/1076 Cox Lane Property of "Electric/AgWell/Irrigation." Kurz Dec., p. 4:1; Dckt. 195.

**Descriptions of the Dulai/1076 Cox Lane Property by**
**Creditor Appraiser Benjamin Holt**

Mr. Holt provides the following description for the Dulai/1076 Cox Lane Property in his Appraisal Report:

> The Dulai Property is developed to a young pistachio orchard. The single legal parcel is slightly irregular in shape, with slightly undulating terrain and rests at an elevation of around 110± feet above sea level. The property has a drainage swale that cuts through the property and flows towards the southeastern corner and the orchard is somewhat impacted by this natural drainage feature. There are high-tension power lines that run along the eastern edge of the property and cut through the orchard.

> Historically the area has been limited to rural homesites and native pastureland, but with the demand for orchard ground in the broader subject market, these "fringe" areas were developed to nut and olive orchards between 2010 and 2020. The properties around the subject consists of nut orchards, pastureland, rice land and rural homesites.

> The owner reported that the orchard was planted to the Platinum rootstock in 2017 and grafted over to the Golden Hills pistachio varietal in 2018, with Randy pollinators. The subject orchard is considered to be in average overall condition. **However, according to the owner, there may not be a viable crop for the 2024 crop year, which is a cause for concern as the orchard is in its 8th leaf and should be producing a viable crop.** This would indicate that the subject orchard is a few years behind in development, likely due to its Class V soil, drainage issues and

27

1    fringe location.

2    Holt Appraisal Report, p. 59 of 130; Exhibit 1, Dckt. 257 (emphasis added).

3          In Mr. Holt's Final Conclusions, he addresses the "Physical Depreciation" for the orchards,

4    stating that:

5          Permanent plantings can have a wide range of economic life spans, depending on
       cultural practices utilized over the lifespan of the development. Peach orchards have
6          an expected lifespan of 23 years, while pistachio orchards have an expected lifespan
       of 50 years. Immature permanent plantings generally do not suffer from any physical
7          depreciation while they are in their establishment stage; thus, the physical
       depreciation rate is not applied until the permanent planting is fully developed and
8          all the funds to develop the permanent planting have been expended and the
       development is at or near a break-even operational point.
9

10   | Type | Economic Life | Immature Years | Depreciable Life | Annual Depreciation |
   |------|---------------|----------------|------------------|---------------------|
11   | Pistachio Orchard | 50 | 6 | 44 | 2.25% |
   | Peach Orchard | 23 | 3 | 20 | 5.00% |
12

13   *Id*., p. 125 of 130; Dckt. 262 at 14.

14         Here, the pistachio orchard is early in its 50-year economic life.  However, though the trees

15   are now 8 years old, Mr. Holt reports that there may not be a viable crop in 2025 and this causes

16   concerns with respect to such Pistachio orchard.

17         Mr. Holt's Appraisal Report includes the information that the Dulai/1076 Cox Lane Property

18   has a single on-site well, with the Debtor in Possession reporting that it produces 600+ gallons a

19   minute. *Id*., p. 28 of 130; Dckt. 255 at 17.  The Appraisal also states that the Dulai/1076 Cox Lane

20   Property does not have entitlements to surface water rights. *Id*.

21   **Review of Comparable Properties Used by the Appraisers
   in Reaching Their Valuations for the**
22   **Dulai/1076 Cox Lane Property**

23         Both Appraisers provide the court with comparable properties they have used in coming up

24   with the respective opinions as to the Value of the Dulai/1076 Cox Lane Property.

25   **Debtor in Possession's Appraiser
   Douglas Kurz Comparable Properties and Valuation**
26

27         The court begins with the comparable properties used by Douglas Kurz, the Appraiser for

28   the Movant Debtor in Possession.  The Kurz Appraisal Report, pages 1 and 2 of 17, is filed as

28

Exhibit 2; Dckt. 197 at 2-3, from which the following information is obtained.

    A.        <u>Comparable No. 1, 50 District Center Drive, Oroville, California, 34.34 Acres</u>

           1.        Distance From Live Oak/Pcl 37 & 38 Property.........6.08 Miles

           2.        Sales Price and Date

                    a.        Sales Date........................January 16, 2024

                    b.        Sales Price.......................$310,000

                    c.        Sales Price Per Acre........$   9,027

           3.        Adjustments

                    a.        Comparable No. 1 being only 34.34 Acres, Mr. Kurz makes an increase of $298,000 due to the Dulai Property being 64.22 acres.

                            (a)      That is an additional $9,973 per acre increase for the additional 29.885.66.

                    b.        Comparable No. 1 is identified as having an "Older 1 Bed, 1 Bath Mobile Home In Poor Condition And Was Given No Value By The Agent. Estimated Cost To Remove The Mobile Is $5,000." Mr. Kurz makes a decrease in the sales price of Comparable No. 1 of ($5,000).

           4.        Adjusted Value Based on Comparable No. 1 for the Live Oak/Pcl 37 & 38 Property is ...................................$603,800.

                    a.        The average per acre adjusted value is $9,402 ($603,800 ÷ 64.22 acres).

           5.        Mr. Kurz provides the additional comments regarding Comparable 1:

                    a.        "Should Be Noted The Crops Were Given No Value In This Analysis. Crops And The Related Income Are Considered Personal Property And Are Not Included In Real Estate Valuations. Paired Sales Indicated Sales In Early 2023 Require A 25% Negative Adjustment For Changing Market Conditions."

                    b.        "All Three Sales Are Located In The Subjects Immediate Neighborhood. Comps 1 & 2 Are Inferior As To Acreage And Represent The Lower End Of Value, Comp 2 Is Similar In Lot Size, Per The Agent The Well Is New, The Orchard Is Now "Pristine", Which Accounts For The Highest Sales Price Per Acre. Comp 3 Has A Septic System Installed, -$10k Via Paired Sales."

    B.        <u>Comparable No. 2, 1200 Lower Honcut Rd, Oroville, California, 62.38 Acres</u>

           1.        Distance From Dulai Property...................................4.5 Miles

           2.        Sales Price and Date

                    a.        Sales Date........................March 12, 2024

              b.       Sales Price.......................$861,271

              c.       Sales Price Per Acre........$  13,807

3.       No Adjustments.

4.       As noted above, Mr. Kurz found Comparable 2 to be an inferior and representing the lower end of value.

C.       Comparable No. 3, 62 Arabian Way, Oroville, California, 32 Acres

     1.       Distance From Dulai Property...................................0.60 Miles

     2.       Sales Price and Date

              a.       Sales Date.........................May 18, 2023

              b.       Sales Price.......................$270,000

              c.       Sales Price Per Acre.........$8,438

     3.       Adjustments

              a.       Comparable No. 3 being 32 Acres, is smaller than the 64.22 acre Dulai Property.

                     (1)      Increase for additional 32.22 Acres............$322,200.

                            (a)     The increase for the additional 32.22 acres averages $10,000 per acre.

              b.       A reduction of ($67,500) because the Comparable 3 sale closed May 18, 2023.

              c.       A reduction of ($10,000) for "well and septic."

     4.       Adjusted Value Based on Comparable No. 3 for the Dulai Property............................................................................$514,700.

              a.       Based on the adjusted value, the per acre price is $8,015.

D.       Comparable No. 4, Dayton Rd W Pcl 3, Dayton, California, 66.70s

     1.       Distance From Dulai Property...............................26.21 Miles

     2.       Sales Price and Date

               a.       Sales Date.........................August 2, 2024

               b.       Sales Price.......................$850,000

               c.       Sales Price Per Acre........$  12,743

///

3. Adjustments

    a.    Mr. Kurz makes a reduction of ($175,000) because he finds Comparable 4 to be in a "Good/Rural Location," but the Dulai Property is in an "Average/Rural Location."

4. Adjusted Value Based on Comparable No. 4 for the Dulai Property.............................................................................$675,000.

    a.    Based on the adjusted value, the per acre price is $10,511.

5. Mr. Kurz makes a comment at the end of page 2 of his Appraisal Report for the comparable properties, stating [the court restructuring the statement to provide different lines for each comparable property]:

    10/11/2024 Update: Comp 4 Is The Most Recent Sale On Acreage In The Region Similar To The Subjects Lot Size. Location Is Superior.

    Dayton Is A Superior Market Area, -$175,000 Via Paired Sales. Original List Price Was $1,340,000. List Price Reduced To $950,000 After 48 Dom, Offer Received At 69 Dom For $850,000. Price Per Ac Is Within The Range Of Value Found When The Original Valuation Was Performed And Is Supportive Of The Original Opinion Of Vlaue [*sic*].

After making the adjustments to each comparable property and generating his "Indicated Value of Subject [the Bankruptcy Estate Property]," the values for the Dulai Property based on the comparable properties are:

    Based on Comparable 1.............................$603,800;

    Based on Comparable 2.............................$861,271;

    Based on Comparable 3.............................$514,700; and

    Based on Comparable 4.............................$675,000.

In his Declaration, Mr. Kurz also provides the following testimony concerning the selection of the comparable properties used in reaching his opinion of value:

    g.    All three sales are located in the subjects immediate neighborhood. Comps 1 and 2 are inferior as to acreage and represent the lower end of value, Comp 2 is similar lot size, per the Agent the well is new, the orchard is now pristine, which accounts for the highest sales price per acre. Comp 3 has a septic system installed, -$10k via paired sales. Comp 1 has an older 1 bed, 1 bath mobile home in poor condition and was given no value by the Agent. Estimated cost to remove the mobile is $5,000. It should be noted the crops were given no value in this analysis. Crops and the related income are considered personal property and are not included in real estate valuations. Paired sales indicate sales in early 2023 require a 25% negative adjustment for changing market conditions. See Pages 1 and 2 of the Cox Lane Appraisal attached as Exhibits "2" to the Exhibits Pleading filed concurrently hereto

1   and incorporated herein by reference.

2   h. The indicated value range for price per acre is $8,438 to $13,807. All three sales
    were weighted equally, a mid range value indicator was selected. $10,500 per acre
3   is considered reasonable and appropriate. 64.22 X $10,400 ® = $674,310 round to
    $674,000.00.

4

5   Kurz Dec., p. 4:12-27; Dckt. 195.

6   Based on the comparable properties, Mr. Kurz concludes that the value of the Dulai Property

7   is $674,310, which is an average of $10,500 per acre.

8   **Creditor's Appraiser**
9   **Benjamin Holt Comparable Properties and Valuation**

10  The court is conducting a review of Creditor's Appraisal Report issued by Mr. Holt in the

11  same manner and methodology as describe above for the Live Oak/Pcl 37 & 38 Property.  The court

12  does not repeat the broader review of Mr. Holt's Appraisal Report, but incorporates it herein by this

13  reference.

14  The court reviews the comparable properties used by Benjamin Holt in coming to his

15  $1,600,000 opinion of value for the Dulai Property.

16  On pages 97-99 (summaries of adjustments) of 130 of the Holt Appraisal Report; Dckt. 259

17  at 6-9; and page 89 (the sales and adjustments) of 130; Dckt. 258 at 18; are Charts identifying ten

18  comparable properties use by Mr. Holt in preparing his Appraisal for Creditor.  These are the same

19  properties and analysis provided for the Live Oak/Pcl 37 & 38 Property, and the above review on

20  pages 17-20 above are incorporated here by this reference.

21  For these ten comparable properties all are superior, but one, which is identified as inferior.

22  These ten comparable properties and their per acre sales price are:

| Comparable Sale Properties | Location | Superior/Inferior to the Dulai/1076 Cox Lane Property | Date of Comparable Sale | Sale Price Per Acre of Comparable Property |
|---|---|---|---|---|
| Land 1 | Oroville | Superior | May 2022 | $17,771 |
| Land 2 | Live Oak | Superior | July 2022 | $16,356 |
| Land 3 | Sutter | Superior | Nov. 2022 | $14,563 |

| Land 4 | Gridley | Superior | Jan. 2023 | $22,000 |
| Land 5 | Yuba City | Superior | Feb. 2023 | $31,993 |
| Land 6 | Live Oak | Superior | May 2023 | $31,603 |
| Land 7 | Oroville | Inferior | Aug. 2023 | $8,438 |
| Land 8 | Live Oak | Superior | Nov. 2023 | $24,500 |
| Land 9 | SW Yuba City | Superior | Feb 2024 | $22,000 |
| Land 10 | Yuba City | Superior | Apr. 2024 | $21,669 |

Holt Appraisal Report, p. 99 of 130; Dckt. 259.

Looking at the data above presented by Creditor's Appraiser Mr. Holt, even superior comparable properties to the Dulai/1076 Cox Lane Property had sales in the $17,000 to $22,000 per acre range, if one excludes the $8,438 lowest amount and the $31,993 and $31,603 as the extremes in the comparable properties presented.

Also, the sale amounts show the per acre price for the comparable properties dropping 11.5% from November 2023 to April 2024. This is a 32.3% drop in per acre price from the high of $31,993 shown in February 2023.

To address there being a young pistachio orchard on the Dulai Property, Mr. Holt has also considered the following comparable properties. He notes that there are few pistachio orchards in Northern California, so he has included properties from Fresno, King, Madera, and Kern Counties. The additional comparable properties are on page 100 of 130 of the Holt Appraisal Report; Dckt. 259 at 9; and are (no address provided but APNs for the comparable properties are provided):

A.     Comparable Pistachio 1, 60 Acre Orchard in Butte County.

     1.     Sales Date August 2022.

     2.     Sales Price..............................................................$2,725,000.
          a.     Price Per Acre.......................$45,417

     3.     Adjustments to Comparable 1 Sales Price:

          a.     ($492,400) for Buildings/Improvements.
          b.     ($93,000) for "Other Land."

     4.     Adjusted Price..........................................................$2,139,100.

          a.     Adjusted Price Per Acre ....... $38,370

B.     Comparable Pistachio 2, 55.73 Acre Orchard in Tehama County.

    1.     Recorded Date.................April 2022.

    2.     Sales Price ...........................................................$1,857,180.

        a.     Price Per Acre.......................$33,325

    3.     Adjustments to Comparable 2 Sales Price:

        a.     ($118,392) for Buildings/Improvements.
        b.     ($260,000) for "Other Land."

    4.     Adjusted Price...........................................................$1,478,188.

        a.     Adjusted Price Per Acre ....... $39,370

C.     Comparable Pistachio 3, 103.44 Acre Orchard in Fresno County.

    1.     Recorded Date.................January 2023.

    2.     Sales Price ...........................................................$3,150,000.

        a.     Price Per Acre.......................$30,452

    3.     Adjustments to Comparable 3 Sales Price:

        a.     ($107,7800) for "Other Land."

    4.     Adjusted Price...........................................................$3,042,220.

        a.     Adjusted Price Per Acre ....... $31,331

D.     Comparable Pistachio 4, 81.97 Acre Orchard in Kings County.

    1.     Recorded Date.................January 2024.

    2.     Sales Price ...........................................................$2,600,000.

        a.     Price Per Acre.......................$31,719

    3.     Adjustments to Comparable 4 Sales Price:

        a.     ($1,049,250) for "Other Land."

    4.     Adjusted Price...........................................................$1,550,750.

        a.     Adjusted Price Per Acre ....... $38,796

E.     Comparable Pistachio 5, 129.78 Acre Orchard in Madara County.

    1.     Recorded Date.................July 2024.

    2.     Sales Price ...........................................................$3,250,000.

a.      Price Per Acre........................$25,042

3.      Adjustments to Comparable 4 Sales Price:

a.      ($79,800) for "Other Land."

4.      Adjusted Price..........................................................$3,170,200.

a.      Adjusted Price Per Acre (based on only 121.80 acres)...... $26,028.

F.      Comparable Pistachio 6, 547.58 Acre Orchard in Kern County.

1.      Recorded Date..................June 2024.

2.      Sales Price ...............................................................$15,338,500.

a.      Price Per Acre........................$28,011

3.      Adjustments to Comparable 4 Sales Price:

a.      ($505,280) for "Other Land."

4.      Adjusted Price..........................................................$14,833,220.

a.      Adjusted Price Per Acre ...... $28,747

Mr. Holt also includes a location adjustment table on page 102 of 130 in his Appraisal Report that appears to reduce the per acre adjusted value for these six pistachio comparable properties.

**Location. Due to the difference in location and water supply between the subject and sale properties, a land adjustment has been made to the sales based on the subject's and sales' respective underlying land values.** The sale properties will be adjusted according to the difference between each sale property's underlying land value and the underlying land value for the subject property. This adjustment accounts for the location of the sale properties in relation to the subject. The following table shows the land adjustment analysis with the adjusted unit values for the sale properties shown on the bottom line.

| Sale Number | Pistachio 1 | Pistachio 2 | Pistachio 3 | Pistachio 4 | Pistachio 5 | Pistachio 6 |
|---|---|---|---|---|---|---|
| Overall Unit | $38,370 | $39,951 | $31,331 | $38,769 | $26,028 | $28,747 |
| Sales Underlying Land Value | $20,000 | $20,000 | $17,000 | $25,000 | $10,000 | $16,000 |
| Subject's Underlying Land Value | $12,000 | $12,000 | $12,000 | $12,000 | $12,000 | $12,000 |
| Land Adjustment | ($8,000) | ($8,000) | ($5,000) | ($13,000) | $2,000 | ($4,000) |
| Land Adjusted Unit Value | $30,370 | $31,951 | $26,331 | $25,769 | $28,028 | $24,747 |

35

Holt Appraisal Report, p. 102 of 130; Dckt. 260 at 4.

In discussing the values of pistachio orchards, Mr. Holt notes that in considering the value of this type of orchard land:

> **Pistachio Industry Trends.** The 2023 Pricing for pistachios is reported to be below the 2022 pricing due to an overall large industry crop. 2024 Pistachio pricing is anticipated to fall in the $1.90 to $2.20 pound range, with the actual base pricing near $1.50 reported by some market participants already. **The anticipated low pricing has led to market participants pushing back on the historically high market values paid for orchards in the last two years.** Numerous listings are currently on the market and the most recent sale of pistachio orchards are starting to show a decline in market values, this is especially true for orchards located in areas with limited surface water.

Holt Appraisal Report, p. 12 of 130; Dckt. 252 at 19 (emphasis added).

As noted above, Mr. Holt's Appraisal Report states that the Dulai/1076 Cox Lane Property does not have any surface water right entitlements. Mr. Holt's reference above to there having been "historically high market values paid for orchards for the past two years" is consistent with Douglas Kurz's, Debtor in Possession's Appraiser, testimony in his Reply Declaration, stating:

> 6.    The market for agricultural properties is slow in the region, resulting in very few recent sales for consideration. This segment of the market is slow because of declining or low crop prices, high cost to harvest crops, high interest rates and inflation. Which results in a buyers' market, with declining values.

Kurz Reply Dec., ¶ 6; Dckt. 272.

Mr. Holt concludes that the Dulai/107 Cox Lane Property has a value of $1,600,000, which is a per acre price of $24,914 for the 64.22 acre Dulai Property/1076 Cox Lane Property. Going to the ten comparable properties list on pages 97 and 98 of 130 (Dckt. 259 at 9-10), this $24,914 per acre price is greater then seven (7) of the superior comparable properties. Using the lowest Superior Property, Land No. 3, of $14,563 per acre, the 64.22 acre Dulai Property would be valued at $935,235.

Using the six pistachio comparable properties, the $1,600,000 valuation, being $24,914 per acre, is comparable to the Pistachio 6 Comparable Property for which there is a $24,747 per acre price.

///

///

36

**The Court's Factual Finding of Value
of the Dulai/1076 Cox Lane Property**

The court has been presented with two very divergent Appraisals by these two experts, Benjamin Holt for the Creditor and Douglas Cruz for the Debtor in Possession, for the 64.22 acre pistachio orchard Dulai/1076 Cox Lane Property. Mr. Kurz presents the court with a valuation of $674,000, which averages to $10,495 per acre. This is in the middle of his four comparable properties which had sales prices of $8,438 (Comparable No. 3), $9,027 (Comparable No. 1), $12,743 (Comparable No. 4), and $13,807 (Comparable No. 2). Kurz Appraisal Report, pp. 1-2 of 19; Exhibit 2, Dckt. 197.

Interestingly, Comparable 2, with a per acre price of $13,807, was a property for which Mr. Kurz did not have to make any adjustments. In his Declaration, Mr. Kurz states that, "[C]omp 2 is similar lot size, per the Agent the well is new, the orchard is now pristine, which accounts for the highest sales price per acre." Kurz Dec., p. 4:13-15; Dckt. 195.

In Mr. Kurz Declaration filed in Reply to the Opposition, his rebuttal testimony includes noting that "[M]r. Holt's appraisal states, the subject pistachio orchard has produced very limited crops in 8 years, most likely due to inferior soil and drainage." Kurz Reply Dec., p. 3:6-7; Dckt. 272. In reviewing Benjamin Holt's Appraisal Report for the Dulai/1076 Cox Lane Property, he states that:

> However, according to the owner, there may not be a viable crop for the 2024 crop year, which is a cause for concern as the orchard is in its 8th leaf and should be producing a viable crop. This would indicate that the subject orchard is a few years behind in development, likely due to its Class V soil, drainage issues, and fringe location.

Holt Appraisal Report, p. 59 of 130; Dckt. 257 at 8.

The language in Mr. Holt's Report is that the Debtor in Possession tells him that there may not be a viable crop for 2024. The Holt appraisal report does recognize the Class V soil and other conditions that may limit the ability of the Pistachio Order to produce a good crop.

Mr. Holt, in his Declaration, provides rebuttal testimony concerning the Debtor in Possession's valuation of the Dulai/1076 Cox Lane Property, including the following:

13.    Mr. Kurz categories of comparable sales do not take into account the

agricultural components of the properties.

- Mr. Kurz's valuation of the Dulai Property does not incorporate any analysis of the effect of pistachio sales on value and utilized sales of inferior orchard types to value a young pistachio orchard.

Holt Dec., p. 5:7-11; Dckt. 251.

Mr. Holt provides a broader array of comparable properties, Land 1 through Land 10 Comparable Properties and the Pistachio 1 through Pistachio 6 Comparable Properties. The per acre values for the first ten comparable properties run from $8,438 per acre to $31,993 per acre. The $8,438 is the low end aberration and the $31,993 and $31,603 per acre are the high end aberrations. The per acre valuations from the ten comparable properties center around $17,000 per acre to $22,000 per acre. These are all stated to be "Superior" to the Dulai/1076 Cox Lane Property being valued in this Motion.

For the six pistachio comparable properties, two are in Northern California and are stated to have per acre prices of $28,3770 and $39,951. While some adjustments are made for buildings and other lands, it is not clear how these Comparable Pistachio Properties compare to the Dulai/1076 Cox Lane Property, which is now not producing a viable crop for 2024.

As with the Live Oak/Pcl 37 & 38 Property valuations, the court concludes that each Appraiser became fixated with the lower valuation properties by the Appraiser for the Debtor in Possession, with a $10,495 per acre valuation, and the higher valuation properties for the Creditor's Appraiser, with a $24,914 per acre valuation, for the Dulai Property/Cox Lane 107.

This court, having the benefit of the Appraisals and testimony from the two experts, concludes that the value of the 64.22 acre pistachio orchard Dulai/1076 Cox Lane Property is $1,130,000. This averages $17,595 an acre. This is within the range of comparable properties provided by Mr. Holt for Creditor, and is sixty seven percent (67%) higher than the $10,495 testified to by Mr. Kurz for the Debtor in Possession.

The evidence presented to the court is that this pistachio orchard on the Dulai/1076 Cox Lane Property is not producing a viable crop for 2024 and may well have soil, water, and drainage problems. From what has been presented, that brings the orchard value down, which the court found

to be a significant factor in determining the value of Dulai/1076 Cox Lane Property.

**CONCLUSION**

As stated in this Ruling, the court concludes and determines that the following Real Properties that secure the Claim of HD Owner, LLC, Creditor, have the following values:

      a.      Gridley Properties .....................................$1,326,000,

      b.      Live Oak Property .....................................$  625,000, and

      c.      Dulai /1076 Cox Lane Property.................$1,130,000.

The aggregate value of these Real Properties that secure Creditor's Claim is $3,081,000.

Creditor has filed Amended Proof of Claim 16-2 which asserts Creditor's Claim in the amount of ($3,935,598.74).

Pursuant to 11 U.S.C. § 506(a) the court computes the secured and unsecured claims of HD Owner, LLC as stated in Amended Proof of Claim 16-2 as follows:

Total Secured Claim Asserted, Amended Proof of Claim 16-2........($3,935,598.74)

      Value of Real Property Securing Amended Claim 16-2........$3,081,000

Amount of Secured Claim (value of collateral)...............................($3,081,000)

Amount of General Unsecured Claim is the balance of Creditor's Claim, which based on Amended Proof of Claim 6-2 is ($854,598.74).

The court shall enter an order granting the Motion to Value which determines the Claim of Creditor HD Owner, LLC, Amended Proof of Claim 16-2, to be  a secured claim in the amount of ($3,081,000) and a general unsecured claim for the balance of Creditor's claim, which based on Amended Proof of Claim 16-2 would be a general unsecured claim in the amount of ($854,598.74).

**Dated:** April 10, 2025

**By the Court**

Ronald H. Sargis, Judge
United States Bankruptcy Court

39

# Instructions to Clerk of Court
### Service List - Not Part of Order/Judgment

**The Clerk of Court is instructed to** send the Order/Judgment or other court generated document transmitted herewith *to the parties below*. The Clerk of Court will send the document via the BNC or, if checked _____, via the U.S. mail.

| **Debtor(s) / Debtor(s) In Possession** | **Attorney(s) for the Debtor(s) / Debtor(s) In Possession** |
|---|---|
|  | Ryan C. Wood, Esq.<br>611 Veterans Blvd., Ste. 218<br>Redwood City, CA 94063 |
| **Bankruptcy Trustee** (if appointed in the case) | Office of the U.S. Trustee<br>Robert T. Matsui United States Courthouse<br>501 I Street, Room 7-500<br>Sacramento, CA 95814 |
| **Attorney(s) for the Trustee** (if any) | Tanya Behnam, Esq.<br>2049 Century Park East, Ste. 2900<br>Los Angeles, CA 90067 |
| Jane Pearson, Esq.<br>1000 Second Avenue, Ste. 3500<br>Seattle, WA 98104 |  |